**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FERNANDO PEREZ CORREA CAMARENA,**<br>        **Plaintiff,**<br><br>        **v.**<br><br>**MARKWAYNE MULLIN et al.,**<br>        **Defendants.** | **Civil Action No. 26-730 (JDB)** |

**MEMORANDUM OPINION & ORDER**

Fernando Correa is a Mexican national who has invested $800,000 in a regional center in a high unemployment area in the hopes of securing an investor visa, for which he has petitioned. Congress set a goal of adjudicating such petitions within 120 days, but Correa is still waiting for a decision almost two years after filing his petition.  He has now sued in this Court, seeking an order to compel the government to promptly adjudicate his petition.

At the threshold, the Court has jurisdiction over this action because there is not clear and convincing evidence that Congress sought to bar review of the processing of this category of petitions.  The Court also assumes that the government has a discrete, non-discretionary duty to adjudicate petitions.  However, on the merits Correa has failed to plausibly allege unreasonable delay, particularly because the government applies a rule of reason to adjudicating this type of petition and granting Correa relief would lead to him jumping the line.

**Background**

I.      **Statutory Background**

As amended in 1990, section 203(b)(5) of the Immigration and Nationality Act (INA) authorizes allotting EB-5 visas to immigrants who invest capital that will benefit the U.S. economy

1

by creating at least ten full-time jobs for U.S. workers.  8 U.S.C. § 1153(b)(5); see also Da Costa v. Immigrant Inv. Program Off., 80 F.4th 330, 334-35 (D.C. Cir. 2023).  EB-5 visas are generally issued on a first-come first-served basis.  8 U.S.C. § 1153(e)(1).

To seek an EB-5 visa, an immigrant must first file a petition called a Form I-526 with the U.S. Customs and Immigration Service (USCIS) for classification as an approved investor.  Da Costa, 80 F.4th at 336.  After USCIS approves a Form I-526 petition, the immigrant may apply for conditional lawful permanent resident status, which requires queuing for the Department of State to issue a visa.  Id.  And following two years as a conditional lawful permanent resident, the immigrant may then apply to remove conditions on their status.  See id.

Two years after establishing the EB-5 program, Congress created another pathway to qualify for an EB-5 visa by establishing what is now known as the Regional Center Program.  Id. at 335 (citing Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874-75 (1992)).  Congress has periodically reauthorized the Regional Center Program and most recently did so through the EB-5 Reform and Integrity Act of 2022 (RIA), reforming the program and extending authorization through September 2027.  Id. at 337-38 (citing Pub. L. No. 117-103, Div. BB, § 103, 136 Stat. 1070, 1075 (2022)).

Following the RIA, in processing Regional Center Program petitions the Secretary of Homeland Security must prioritize petitions for rural areas and "may process petitions in a manner and order established by the Secretary."  8 U.S.C. § 1153(b)(5)(E)(ii); see also USCIS, EB-5 Questions and Answers, Inventory Management, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-questions-and-answers [https://perma.cc/L2TV-YRL3] (last visited June 29, 2026).  And the RIA requires

2

the Director of USCIS to adjust fees with a goal of completing adjudications within certain timelines—as relevant here, 120 days for a Form I-526E regarding investment in a "targeted employment area," i.e., a high unemployment area.  136 Stat. at 1104.

## II.    Factual and Procedural History

Correa is a Mexican national who submitted a Form I-526E in early July 2024, seeking an EB-5 visa based on his $800,000 investment in a Regional Center in a high unemployment area. Compl. ¶¶ 10, 21-23, 44, Dkt. 1.  He inquired in mid-February 2026 with both USCIS's Immigrant Investor Program Office and its Ombudsman about the status of his petition but has not heard back. Id. ¶¶ 24-27.  He then filed a complaint before this Court on March 2, 2026, seeking an order to compel agency action unreasonably withheld and mandamus relief.  Id. ¶ 1 (citing 5 U.S.C. § 706(1); 28 U.S.C. § 1361).

The government has moved to dismiss, arguing that (1) the Court lacks subject matter jurisdiction over this dispute, (2) review is unavailable under the Administrative Procedure Act (APA), and (3) Correa has failed to plausibly allege unreasonable delay in any event.  Mot. to Dismiss, Dkt. 3 (citing Fed. R. Civ. P. 12(b)(1), (b)(6)).  Correa has opposed that motion and cross-moved for summary judgment.  Opp'n & Mot. for Summ. J., Dkts. 4, 4-1 & 5.  Both motions are now fully briefed and ripe for resolution.

## Legal Standard

Federal courts are courts of limited jurisdiction and the party asserting jurisdiction bears the burden of establishing it.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Even absent a 12(b)(1) motion to dismiss for lack of jurisdiction, courts have an independent obligation to determine whether subject matter jurisdiction exists and must dismiss an action upon determining that there is no jurisdiction.  Arbaugh v. Y&H Corp., 546 U.S. 500,

514 (2006); Fed. R. Civ. P. 12(h)(3). And to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### Application

### I.   Jurisdiction

The government first argues that the Court lacks subject matter jurisdiction over this dispute. Mot. to Dismiss 8-9. The Court is unconvinced.

The INA provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). And the 2022 Act provides that:

> In processing petitions under section 1154(a)(1)(H) of this title for classification under this paragraph, the Secretary of Homeland Security—
> (I) shall prioritize the processing and adjudication of petitions for rural areas;
> (II) may process petitions in a manner and order established by the Secretary; and
> (III) shall deem such petitions to include records previously filed with the Secretary pursuant to subparagraph (F) if the alien petitioner certifies that such records are incorporated by reference into the alien's petition.

Id. § 1153(b)(5)(E)(ii) (emphasis added).[1]

---

[1] Neither the government nor Correa identify any cases interpreting subclause 1153(b)(5)(E)(ii)(II) in light of a clause 1252(a)(2)(B)(ii) jurisdictional challenge. The Court finds only two, which evince some confusion over the distinction between subject matter jurisdiction and failure to state a claim.

One court in this district held that it lacked subject matter jurisdiction over a claim of unlawful withholding of a rural visa number and that the plaintiff failed to state a claim for denial of expedition. Mukkavilli v. Jaddou, Civ. A. No. 22-2289, 2023 WL 4029344, at *7-8, 10-11 & n.7 (D.D.C. June 15, 2023) (citing Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004); Heckler v. Chaney, 470 U.S. 821, 829 (1985)), aff'd on other grounds, No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024). But both Norton and Chaney are about whether a plaintiff has a cause of action under the APA, respectively addressing whether an agency has failed to take a non-discretionary action it is required to take and whether an agency decision is committed to the agency's discretion by law. And lack of a cause of action is not jurisdictional. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). Although Norton reversed a district court finding of jurisdiction, the opinion nowhere mentioned jurisdiction and both parties at oral

The question whether clause 1252(a)(2)(B)(ii) bars review requires examining whether the challenged conduct is (1) a decision or action under the immigration subchapter and (2) discretionary.  iTech U.S., Inc. v. Renaud, 5 F.4th 59, 62 (D.C. Cir. 2021).

As to the first prong, courts are split on whether clause 1252(a)(2)(B)(ii) applies to allegations of delay.  See, e.g., Geneme v. Holder, 935 F. Supp. 2d 184, 190 (D.D.C. 2013) (collecting cases).  Those finding no jurisdictional bar generally reason that the agency has failed to act rather than acted, and those finding they lack jurisdiction reason that the agency has decided on a certain pace and prioritization for processing petitions.  But in iTech, the D.C. Circuit explained that subparagraph 1252(a)(2)(B) is "not a narrowly cabined provision" and hence it covers all decisions specified to be discretionary under the immigration subchapter, "whether or not those decisions grant or deny an immigrant relief."  5 F.4th at 64, 66.  Accordingly, establishing a "manner and order" for processing petitions under 8 U.S.C. § 1153(b)(5)(E)(ii) satisfies the first part of the iTech test because decisions about "the prioritization and pace" of processing Form I-526 petitions "are 'decisions' and 'actions leading up to' the final [grant or denial] decision."  A.M.S. v. Edlow, --- F. Supp. 3d ---, Civ. A. No. 25-476, 2026 WL 850779, at *10 (D.D.C. Mar. 27, 2026); cf. Mullin v. Doe, Nos. 25-1083 & 25-1084, --- U.S. ---, 2026 WL 1825840, at *7 (June 25, 2026) (holding that "determination" under 8 U.S.C. § 1254a(b)(5)(A) encompassed both a "decision" and "the chain of events leading up to a decision").

As the government points out with respect to the second prong, "the word 'may' clearly connotes discretion."  Mot. to Dismiss 8 (quoting Bouarfa v. Mayorkas, 604 U.S. 6, 13 (2024)).

---

argument acknowledged that the issue was properly about a cause of action.  Oral Arg. Tr. 10:16-12:22; 50:2-4, Norton v. S. Utah Wilderness All., No. 3-101 (S. Ct. Mar. 29, 2004).  Another court followed Mukkavilli's analysis of a cause of action under Chaney and 5 U.S.C. § 701(a)(2) in interpreting 8 U.S.C. § 1153(b)(5)(E)(ii) but then concluded that it lacked jurisdiction.  Aiteliyev v. Mayorkas, 717 F. Supp. 3d 67, 74-75 (D.D.C. 2024).  As the D.C. Circuit has explained, Chaney reviewability is not jurisdictional.  PETA v. USDA, 797 F.3d 1087, 1097 (D.C. Cir. 2015).

And "that connotation is particularly apt where, as here, 'may' is used in contraposition to the word 'shall'" in the neighboring subclauses.  Jama v. ICE, 543 U.S. 335, 346 (2005).  However, the provision in Bouarfa that stripped jurisdiction exuded discretion thrice over, providing that the Secretary "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any [visa] petition."  604 U.S. at 13 (emphases added) (quoting 8 U.S.C. § 1155); see also Karakenyan v. USCIS, 468 F. Supp. 3d 50, 56 (D.D.C. 2020) (emphasizing that section 1155 "contains not one, not two, but three discretionary terms: 'may,' 'at any time,' and 'for what he deems to be'").  And Bouarfa emphasized the lack of any standards for "how that discretion must be exercised" because the Secretary could revoke approval "'at any time,' for whatever reason 'he deems to be good and sufficient cause.'"  604 U.S. at 14.

Bouarfa also highlighted the similarity with other statutes that commit a decision to agency discretion.  Id. (quoting Webster v. Doe, 486 U.S. 592, 600 (1988) (holding that statute allowing CIA Director to fire employee whenever he "shall deem such termination necessary or advisable in the interests of the United States" was standard that "fairly exudes deference," rendering such decisions unreviewable under 5 U.S.C. § 701(a)(2))).  Likewise relying on Webster, the D.C. Circuit has held that two discretionary terms tip a provision over the line to strip jurisdiction.  Zhu v. Gonzales, 411 F.3d 292, 293-96 (D.C. Cir. 2005).  There, the relevant provision stated that the Attorney General "may" waive a labor certification requirement when he "deems it to be in the national interest."  Id. at 293 (emphases added) (quoting 8 U.S.C. § 1153(b)(2)(B)(i)).  Granted, it "is not a simple matter of tallying the 'shalls' and 'mays' and finding that the 'mays' have it."  Id. at 296 (quotation omitted).  But "even if" there is a "manageable standard" by which to evaluate an agency's decision, "Zhu makes clear that the combination of 'may' and 'deems' is sufficient to render a statutory grant of authority . . . discretionary."  iTech, 5 F.4th at 67.

6

Some judges in this District have similarly determined that other immigration provisions with multiple terms of discretion left them without jurisdiction. See, e.g., A.M.S., 2026 WL 850779, at *11 ("[T]he Secretary 'may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe . . . .'" (quoting 8 U.S.C. § 1182(d)(5)(A))); Orlov v. Howard, 523 F. Supp. 2d 30, 34 (D.D.C. 2007) ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe . . . ." (quoting 8 U.S.C. § 1255(a))). But see Liu v. Novak, 509 F. Supp. 2d 1, 7 (D.D.C. 2007) (finding jurisdiction to review 8 U.S.C. § 1255(a) adjustments of status); cf. Geneme, 935 F. Supp. 2d at 188-92 (agreeing that decision whether to adjust status was discretionary where Secretary or Attorney General, in their "discretion and under such regulations as [they] may prescribe, may adjust" status, but holding that decision to put application for status adjustment on hold was reviewable (emphases added) (quoting 8 U.S.C. § 1159(b))).

The question here, however, is whether a single term of discretion—"may"—strips the Court of jurisdiction. It does not.

The Court begins where it must: with the statutory text of 8 U.S.C. § 1153(b)(5)(E)(ii)(II). Bartenwerfer v. Buckley, 598 U.S. 69, 74 (2023). Granted, "may" has a clear connotation of discretion. Bouarfa, 604 U.S. at 13. But "while 'may' suggests discretion, it does not necessarily suggest unlimited discretion." Zadvydas v. Davis, 533 U.S. 678, 697 (2001). And there are no other words of discretion to bolster the single use of "may" here. The statute need not contain the "magic word" of "discretion," Zhu, 411 F.3d at 295, but it neither contains that word, further instances of "may," nor other words connoting discretion such as "deems" or "at any time." To be sure, Bouarfa also observed that clause 1252(a)(2)(B)(i)—the neighboring provision to the catchall jurisdiction-stripping provision here—explicitly bars judicial review of five provisions,

three of which speak to what the Attorney General "may" do "in his discretion," but two of which contain only the single discretionary term "may."  604 U.S. at 14 (citing 8 U.S.C. §§ 1229b(a), 1229c(a)(1)).  Nevertheless, there is no such explicit stripping of jurisdiction here.

Because the text does not "standing alone, conclusively resolve this case," Dubin v. United States, 599 U.S. 110, 118 (2023), the Court must analyze the "text in context," Pulsifer v. United States, 601 U.S. 124, 133 (2024).  Here, the preceding and succeeding subclauses and the broader requirement to process petitions on a first come, first served basis shed light on the meaning of 8 U.S.C. § 1153(b)(5)(E)(ii)(II).  For one, the Court notes that the next subclause (III) includes the discretionary word "deem" that Congress omitted from subclause (II), and "when Congress includes particular language in one section of a statute but omits it in another—let alone the very [previous] provision—this Court presumes that Congress intended a difference in meaning." Loughrin v. United States, 573 U.S. 351, 358 (2014) (citation modified).

More importantly, the Supreme Court in Bouarfa focused on the total lack of "conditions" on the Secretary's exercise of discretion there.  See 604 U.S. at 14; see also Webster, 486 U.S. at 600 ("[A] court would have no meaningful standard against which to judge the agency's exercise of discretion." (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)).  Here, a preceding subclause provides that the Secretary "shall prioritize the processing and adjudication of petitions for rural areas."  8 U.S.C. § 1153(b)(5)(E)(ii)(I).  So, there are conditions on the Secretary's decision to process petitions in a certain manner and order as well as a standard for judging that decision—in establishing a manner and order for processing petitions, the Secretary must prioritize rural ones.

And the wording of subclause 1153(b)(5)(E)(ii)(II) also makes sense read in the context of 8 U.S.C. § 1153(e)(1), which provides that visas under subsection (b) "shall be issued to eligible

8

immigrants . . . in the order in which a petition . . . is filed." In other words, subclause 1153(b)(5)(E)(ii)(II) gives the Secretary permission to establish a new manner and order for processing petitions—namely, to prioritize rural petitions—notwithstanding the general requirement to process on a first come, first served basis. Thus, the context helps resolve any ambiguity from the text of the subclause standing alone.[2]

If reading the text in context were not enough, the Supreme Court has also "consistently applied" the background "presumption favoring judicial review of administrative action" to "legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction." Kucana v. Holder, 558 U.S. 233, 251 (2010). Indeed, the Court "assumes that Congress legislates with knowledge of the presumption" so it "takes clear and convincing evidence to dislodge the presumption." Id. (citation modified); see also Guerrero-Lasprilla v. Barr, 589 U.S. 221, 229 (2020) (reaffirming presumption in the immigration context when a statutory provision "is reasonably susceptible to divergent interpretation"). So, insofar as any ambiguity remains, the presumption tips the balance toward jurisdiction.

In sum, the solitary use of the word "may" connoting discretion does not amount to clear and convincing evidence that Congress sought to strip courts of jurisdiction here. That is so because Congress omitted other words or phrases of discretion that it used in nearby provisions

---

[2] The type of processing delay in dispute here does not encompass a "substantive decision" such as "whether aliens can stay in the country or not." Kucana, 558 U.S. at 247. In Kucana, the Supreme Court found the substantive "character" of the decisions made unreviewable under clause 1252(a)(2)(B)(i) to be "significant," and reasoned that the types of discretionary decisions shielded under clause 1252(a)(2)(B)(ii) are "of a like kind." Id. at 248; cf. Make the Road N.Y. v. Wolf, 962 F.3d 612, 628-34 (D.C. Cir. 2020) (finding jurisdiction to review "general rulemaking governing the removal procedures to be applied in a certain context, not a denial of discretionary relief," but holding that plaintiffs lacked a cause of action because the text—giving the Secretary "sole and unreviewable discretion"—exuded deference under Webster). That said, this Court sees some tension between Kucana's observation and the D.C. Circuit's later holding in iTech that clause 1252(a)(2)(B)(ii)'s bar on review covers all discretionary decisions and actions, regardless of whether they grant or deny relief. 5 F.4th at 66; cf. Mullin, 2026 WL 1825840, at *8 (rejecting argument that judicial review bar in 8 U.S.C. § 1254a(b)(5)(A) applied only to substantive and not procedural claims). The Court need not resolve that tension because the text of subclause 1153(b)(5)(E)(ii)(II) read in context makes plain that the Court has jurisdiction.

9

and because the statutory context both explains Congress's choice and provides standards for review.  Accordingly, the Court has jurisdiction to review the agency action at issue here.[3]

## II.    Reviewability

The government next argues that review remains unavailable under the APA because 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review, Mot. to Dismiss 9-10 (citing 5 U.S.C. § 701(a)(1); Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984)), and Correa has failed to identify a discrete action that USCIS was required to take, id. (citing Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004)).[4]  The Court can summarily dispense with the government's argument for statutory preclusion under 5 U.S.C. § 701(a)(1) because it has already determined that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar review and the government offers no independent argument for preclusion.

Whether USCIS had a non-discretionary, discrete duty to adjudicate Correa's Form I-526E is a closer call.  See Norton, 542 U.S. at 64.  A majority of judges in this District to have addressed the issue have held that the government has a non-discretionary duty to adjudicate visa applications in a reasonable time.  See Ahmed v. Blinken, 759 F. Supp. 3d 1, 10 (D.D.C. 2024) (collecting

---

[3] This Court respectfully disagrees with its colleagues who have found that the agency's decisions under subclause 1153(b)(5)(E)(ii)(II) are committed to agency discretion.  See Mukkavilli, 2023 WL 4029344, at *11-12; Aiteliyev, 717 F. Supp. 3d at 74.  Both cases simply relied on Zhu and USCIS's policy manual, but the statute at issue in Zhu combined multiple words of discretion and the policy manual does not control this Court's statutory interpretation.  In reply, the government also points to a recent out-of-circuit district court case finding no jurisdiction to review decisions under subclause 1153(b)(5)(E)(ii)(II), but that case mistakenly relied on a collection of cases addressing section 1255.  Reply 3, Dkt. 6 (citing Sekar v. Tarango, Civ. A. No. 8:26-468 (FWS), 2026 WL 1454439, at *2-3 (C.D. Cal. May 15, 2026)).  As noted above, section 1255 includes three terms of discretion, and it is inapposite here in any event.

[4] The government couches these statutory preclusion and discrete action arguments as jurisdictional, but both cases pertain to whether a plaintiff has a cause of action.  Block explained that statutory preclusion of APA review under 5 U.S.C. § 701(a)(1) "withdraws [the APA's] cause of action."  467 U.S. at 345.  Although Block also said in a footnote that preclusion is "in effect jurisdictional," id. at 353 n.4, the Supreme Court has since clarified that lack of a cause of action is not jurisdictional, Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998), see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 & n.4 (2014) (explaining that zone-of-interests test formerly considered "effectively jurisdictional" was actually non-jurisdictional cause of action inquiry).  And the Court has already explained above that Norton addressed a cause of action rather than jurisdictional issue.

cases).  But see Mukkavilli, 2023 WL 4029344, at *7-12.  And the D.C. Circuit has previously rejected a Norton challenge in the context of adjudicating EB-3 visas as a "vast overstate[ment]" of the rule from that case.  Meina Xie v. Kerry, 780 F.3d 405, 407-08 (D.C. Cir. 2015).  Perhaps for that reason, the government did not even make a Norton argument when it recently came before the D.C. Circuit in a challenge alleging unreasonable delay in adjudicating Form I-526 petitions. Da Costa, 80 F.4th at 340.  But in any event, because this is not a jurisdictional issue and Correa fails to plausibly allege unreasonable delay as explained below, the Court may assume without deciding that USCIS has a non-discretionary, discrete duty to adjudicate Form I-526E petitions. See Giza v. Blinken, Civ. A. No. 23-1641 (CRC), 2024 WL 3967284, at *4 (D.D.C. Aug. 27, 2024) (citing Baygan v. Blinken, Civ. A. No. 23- 2840 (JDB), 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024)); Trump v. Hawaii, 585 U.S. 667, 682-83 (2018) (assuming without deciding reviewability notwithstanding any non-jurisdictional statutory non-reviewability issues).

The Court therefore assumes without deciding reviewability.

## III.    Unreasonable Delay

On the merits, defendants argue that Corra has failed to state a claim upon which relief can be granted for unreasonable delay.  Mot. to Dismiss 10-19.  The standards for evaluating unreasonable delay under the APA and the Mandamus Act are the same.  Ahmed, 759 F. Supp. 3d at 11.  Courts analyze delay under six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Telecomms. Rsch. & Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) (TRAC) (citation modified).  The first and fourth TRAC factors are the "most important in this case" and so will be addressed initially.  Da Costa, 80 F.4th at 340; see also In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (stating that the first factor is the most important).  Applying those six factors, Correa has failed to plausibly allege delay that is "so egregious as to warrant mandamus."  TRAC, 750 F.2d at 79.

### A. Factor One: Rule of Reason

USCIS employs a rule of reason to adjudicate Form I-526E petitions.  See Da Costa, 80 F.4th at 340-41 ("We conclude that USCIS employs a rule of reason to adjudicate Form I-526 petitions.").[5]  Form I-526E petitions are processed on a first in, first out approach that also considers the agency's statutory obligation to prioritize rural petitions and acknowledges the non-binding congressional intent to prioritize high unemployment area applications.  See USCIS, EB-5 Questions and Answers, Inventory Management, supra.  That is a rule of reason.

Resisting that conclusion, Correa points out that the RIA required the USCIS Director to complete a fee study and thereafter adjust fees with the "goal" of adjudicating high unemployment area petitions on average within 120 days.  See Opp'n 4; 136 Stat. at 1104; 8 U.S.C. § 1153 note.  But those goals—placed in the U.S. Code's notes rather than the statutory text—are "aspirational" rather than mandatory.  See Da Costa, 80 F.4th at 344 (holding that 8 U.S.C. § 1571(b)—setting out "sense of Congress" that "processing of an immigration benefit application" should take no more than 180 days—was "aspirational statement" that was "insufficient to set a deadline"); Emergency Coal. to Defend Educ. Travel v. Dep't of Treasury, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008)

---

[5] Da Costa does not conclusively resolve this issue because USCIS uses a different processing system since the RIA.

(explaining that statutory text setting out "sense of Congress" is "precatory" and "not law").  So, such goals can provide "a ruler against which the agency's progress must be measured" under factor three, Da Costa, 80 F.4th at 344 (citation modified), but that does not mean that the agency lacks a rule of reason.

Correa also complains that USCIS is still adjudicating pre-RIA petitions and only issued 332 rural visas in FY 2024 despite more availability.  Opp'n 4.  But of course, pre-RIA petitions have been languishing for at least four years at this point, so it makes sense that under a generally first in, first out approach, those petitions would get handled first.  And Correa does not allege that his petition is for a rural area, although it is for a high unemployment area.  Compl. ¶ 44.  The USCIS policy recognizes that the RIA "includes various average processing time goals, which, in general, prioritize making decisions on certain targeted employment area (TEA) petitions over non-TEA petitions."  USCIS, EB-5 Questions and Answers, Inventory Management, supra.  But that does not mean that USCIS should not process pre-RIA or non-TEA petitions at all.

Next, Correa argues that USCIS's new processing policy should not apply to him because he filed his petition before USCIS adopted the policy.  Opp'n 4-5.  In support, he cites only an unreported out-of-circuit district court case.  Chhajed v. Jaddou, Civ. A. No. 2:23-483, 2024 WL 1332258 (S.D. Ohio Mar. 27, 2024).  But there is no indication that USCIS's change "would 'take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability, in respect to transactions or considerations already past.'"  Maharaj v. Edlow, Civ. A. No. 25-509 (JDB), 2026 WL 1362433, at *2 (D.D.C. May 15, 2026) (quoting Vartelas v. Holder, 566 U.S. 257, 266 (2012)).  And if anything, the new policy would help Correa because it contemplates grouping petitions "to facilitate usage of reserved visas in line

13

with congressional intent," and high unemployment area investment is one category of reserved visa. See USCIS, EB-5 Questions and Answers, Inventory Management, supra.

Finally, Correa gestures to other lawsuits that allegedly demonstrate "recent administrative failures" at the Department of Homeland Security (which houses USCIS). Mot. 5. But he in no way explains why an agency's shortcomings at issue in other disputes would mean that it lacks a rule of reason with respect to processing the petition in this case.

So, factor one favors the government here.

B. *Factor Four: Effect on Agency Priorities*

This factor "strongly disfavors" Correa. Da Costa, 80 F.4th at 343. That is because granting relief for Correa would come "at the expense of other similarly situated applicants," presenting "line-jumping concerns." Id. at 344 (citation modified). If Correa had plausibly alleged that USCIS was not following a rule of reason or that his petition had been singled out for slower adjudication, this factor might weigh differently. Id. at 343. But absent such plausible allegations, "moving [Correa's] petition[] to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog." Id.

In response, Correa points out that his counsel has secured writ of mandamus settlements with defendants for as many as 11 investors in the same project and that many investors in the project whose petitions have been adjudicated already had filed before Correa. Opp'n 6-7. These arguments prove the opposite point. As the D.C. Circuit explained in Da Costa, examples of some petitions being processed out of order are often "the result of litigation efforts on behalf of other plaintiffs in other actions," underscoring the effect of line jumping. 80 F.4th at 343 (quotation omitted). And it makes perfect sense that investors with longer-standing petitions have received

14

adjudication before Correa—that is precisely how a first in, first out system is supposed to function.

### C. *Factor Two: Congressional Timeline*

This factor "somewhat favors" Correa. Id. at 344. As explained above, aspirational deadlines set by Congress—here, to adjudicate high unemployment area petitions within 120 days—are not mandatory but do provide a benchmark against which to measure agency progress. Id. Correa has waited almost two years for adjudication, or roughly six times longer than Congress intended. Compl. ¶ 23. "But the delay has not reached the level of disproportionality [the D.C. Circuit] ha[s] previously held sufficient to grant relief." Da Costa, 80 F.4th at 344 (citing In re Pub. Emps. For Env't Resp., 957 F.3d 267, 273-74 (D.C. Cir. 2020) (collecting cases finding delays of five to nine years to be unreasonable)); see also Ahmed, 759 F. Supp. 3d at 12 ("[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (citation omitted)).

### D. *Factors Three and Five: Stakes and Interests*

These factors "do not favor" Correa. Da Costa, 80 F.4th at 345. In support, Correa explains that he "has invested $800,000 and deferred life decisions" pending this adjudication. Opp'n 7. But "[w]ithout allegations linking the delayed adjudication of [his] petition to health or welfare harms," the "financial harms [he] alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip TRAC factors three and five in his favor." Da Costa, 80 F.4th at 345.

15

*E. Factor Six: Impropriety*

This factor is "neutral." Id. Correa alleges "intent to circumvent the law" and a "bad-faith effort to avoid the timelines . . . Congress fought to implement." Opp'n 7. But such "conclusory" allegations "do not plausibly allege government misconduct." Da Costa, 80 F.4th at 346.

\* \* \*

The Court understands Correa's frustration at a delay now measuring nearly two years—over six times the congressional goal of time for adjudicating like petitions. However, applying the TRAC factors, he has failed to state a plausible claim for delay that this Circuit considers unreasonable.

**CONCLUSION**

For the foregoing reasons and upon consideration of [3] the government's motion to dismiss, [5] plaintiff's cross-motion for summary judgment, and the entire record herein, it is hereby **ORDERED** that the motion to dismiss is **GRANTED** and the case is accordingly **DISMISSED**; and it is further **ORDERED** that the cross-motion for summary judgment is **DENIED**.[6] **SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Date: June 29, 2026

---

[6] Given that Correa has failed to state a claim under the APA or Mandamus Act, he has failed to plausibly allege entitlement to attorney's fees and costs under the Equal Access to Justice Act either. See Compl. ¶¶ 102-04 (citing 28 U.S.C. § 2412). And the Court will dismiss the case without prejudice because he could theoretically cure the deficiencies in his claims by pleading more facts. See Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996).